UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SANDSTONE SPRINGS, LLC,

                      Plaintiff,

    v.

VIRAG DISTRIBUTION, LLC,

                      Defendant.

**DECISION AND ORDER**

21-CV-541S

## I.     Introduction

This is a removed diversity action for alleged breach of contract of a purchase agreement and its change orders.   Plaintiff, a New York limited liability corporation ("LLC"), sued Defendant, a Florida LLC, for nonpayment of hemp and hemp products ordered in that purchase agreement.

Before this Court is Defendant's Motion to Dismiss or to Transfer this action (Docket No. 5).   First, Defendant seeks dismissal of the action for lack of personal jurisdiction (under Federal Rule of Civil Procedure 12(b)(2)) or for improper venue (under Rule 12(b)(3) or 28 U.S.C. § 1406(a)) (id.).   Alternatively, Defendant moves to transfer this case to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1404 (id.).   If this case remains in this Court, Defendant further argues the First, Third, and Fourth Causes of Action should be dismissed, under Federal Rule of Civil Procedure 12(b)(6).

For reasons stated below, Defendant's Motion to Dismiss (Docket No. 5) under Rule 12(b)(2) for lack of personal jurisdiction is granted in part (dismissing allegations based upon general personal jurisdiction under New York CPLR 301) and denied in part

(because Plaintiff established specific jurisdiction over Defendant in New York under CPLR 302(a)(1)). Defendant's Motion to Dismiss (id.) for improper venue under Rule 12(b)(3) is denied. Alternatively, Defendant's Motion to Transfer (id.) under 28 U.S.C. § 1404 to the Southern District of Florida is denied. Defendant's alternative Motion to Dismiss (id.) the First, Third, and Fourth Causes of Action is granted to dismiss each of these Causes of Action.

## II.    Background

A. Procedural History

After Plaintiff filed this action in New York State Supreme Court on March 19, 2021, Defendant removed the case to this Court (Docket No. 1, Notice of Removal). On May 4, 2021, Plaintiff filed its Complaint in this Court (Docket No. 4).

1. Complaint

Plaintiff alleges it sells and resells products, here hemp and hemp products (Docket No. 4, Compl. ¶ 2; Docket No. 8, Decl. of John Bordynuik (president and chief executive officer of Plaintiff, "Bordynuik") ¶ 6). Meanwhile, Defendant purchases and resells products (Docket No. 4, Compl. ¶ 4). On December 10, 2019, Defendant purchased gummies, "smokes," hemp, and various packaging from Plaintiff (id. ¶¶ 7, 16, Ex. A).

For jurisdictional and venue issues, Plaintiff alleges the negotiations leading to the order of hemp products. Plaintiff claims that on December 4, 2019, Defendant's president, Vasilios Koutsogiannis ("Koutsogiannis"), met with Bordynuik in Niagara Falls, New York, expressing interest in purchasing hemp products from Plaintiff (id. ¶ 13). Plaintiff agreed to sell products to Defendant (id. ¶ 15).

2

Defendant, however, disputes the importance of this meeting.  Defendant claims that there was no negotiation of the deal there.  (Docket No. 5, Koutsogiannis Decl. ¶ 11; Docket No. 9, Koutsogiannis Reply Decl. ¶¶ 10-13, Ex. A.)  Defendant's president denied traveling to New York to conduct business with Plaintiff (Docket No. 5, Koutsogiannis Decl. ¶ 12; Docket No. 9, Koutsogiannis Reply Decl. ¶ 11).  Instead, Defendant contends that the parties in fact negotiated the purchase agreement in a series of email messages and telephone conversations with Koutsogiannis in Florida after December 4 (Docket No. 5, Koutsogiannis Decl. ¶ 13; Docket No. 9, Koutsogiannis Reply Decl. ¶ 14).

The Complaint describes the initial purchase order (Docket No. 4, Compl. ¶¶ 7, 16, Ex. A).  On December 10, 2019, Defendant purchased products from Plaintiff valued at $1,063,800, requiring a 50% down payment (or $531,900) with the remainder due upon shipment of products (id.).  On December 13, 2019, Defendant wired the 50% down payment (id. ¶¶ 8, 17).

On December 14, Koutsogiannis advised Plaintiff that he could not do the graphics on his own and required Plaintiff's help.  Plaintiff then engaged its graphic designer on the products, adding to the cost and delaying production.  (Id. ¶ 18.)  On January 16, 2020, Plaintiff purchased hemp flower for Defendant's order (id. ¶ 19).

Plaintiff alleges that Defendant changed its mind on the graphics, packaging, and choice of containers for the hemp products, delaying the order (id. ¶ 20).  On February 27, 2020, Defendant informed Plaintiff that it was necessary to change the December 2019 invoice, submitting the first change order (id. ¶¶ 9, 21, Ex. B).  Defendant sought to have hemp flower sent to it directly in bulk rather than in jars (id. ¶ 21, Ex. B).  Defendant states that this hemp is "farm bill compliant and tests over 18% CBD" (id.).  Farm bill compliant

3

hemp is industrial hemp that has delta-9 tetrahydrocannabinol concentration (or "THC") that is no more than .3% of its dry weight, 7 U.S.C. § 5940(a)(2) (definition of industrial hemp).  On or about March 5, 2020, consistent with the first change order, Plaintiff shipped Defendant 110 pounds of hemp flower (id. ¶ 22).

On or about March 17, 2020, Defendant submitted a second change order reducing the jar portion of the order to bulk hemp flower, canceling gummy bag line items, and crediting the changes (id. ¶¶ 10, 23, Exs. C, D).  On August 28, 2020, Defendant's chief financial and operations officer sent an executed second change order; during the intervening months that change order was with Defendant (id. ¶¶ 10, 24).  After the second change order, the new total was $735,800; less the paid down payment, Defendant then owed $203,900 (id. ¶ 25).  Plaintiff shipped the hemp product in October 2020 (id. ¶ 26).

From August 1, 2020, through January 6, 2021, Defendant refused to pay the $203,900 and Plaintiff made repeated demands for payment (id. ¶¶ 11, 26-27, Exs. A-C). Defendant refused partial product fulfillment but wanted the entire order when it was complete (id. ¶ 28).  Plaintiff claims it had to store completed products to complete Defendant's order (id. ¶ 29).

In the First Cause of Action, Plaintiff alleges Defendant failed to pay for the goods (id. ¶¶ 31-37).  The Second Cause of Action alleges Defendant breached the contract by not paying the outstanding balance for the ordered hemp products (id. ¶¶ 39-45).  The Third Cause of Action seeks specific performance of the invoice and two change orders (id. ¶¶ 47-52).  Plaintiff alleges in its Fourth Cause of Action breach of the duty of good faith and fair dealing (id. ¶¶ 54-59).

Plaintiff alleges damages of $203,000 for the unpaid balance, costs for storage, and punitive damages of $1 million (id. ¶ 11, Wherefore Cl.).

### 2. Defendant's Motion (Docket No. 5)

Defendant moved to dismiss or to transfer this case to the Southern District of Florida (Docket No. 5[1]).

Defendant's president Koutsogiannis claimed he came to Niagara Falls on December 4, 2019, for a brief meeting with Bordynuik unrelated to any business with Plaintiff (Docket No. 5, Koutsogiannis Decl. ¶¶ 7, 8, 11).  Koutsogiannis was approached and invited to have an introductory meeting with Bordynuik (id. ¶¶ 9-10).  He (and any representative of Defendant) denied ever traveling to New York to conduct meetings with Plaintiff (id. ¶ 12).  Upon returning to Florida, Koutsogiannis exchanged a series of email messages and telephone calls to negotiate the sale (id. ¶¶ 13, 14).

The parties then negotiated change orders after Defendant paid the deposit based upon the initial order (id. ¶¶ 16, 15).  Koutsogiannis observed that the change order required that the bulk hemp had to be farm bill compliant (id. ¶ 17; see Docket No. 4, Compl. ¶ 21, Ex. B), see 7 U.S.C. § 5940(a)(2).  Plaintiff shipped 287 pounds of hemp flower but upon inspection it was found not to be farm bill compliant because it has a THC level above .3% (Docket No. 5, Koutsogiannis Decl. ¶ 18); see id.  Defendant tried to resolve the matter by serving a confidential demand letter seeking refund of its down payment (id. ¶ 19, Ex. C).  Defendant indicated that it planned to sue if this matter was

---

[1]In support of its Motions, Defendant submits its Memorandum of Law; its attorney's Declaration with exhibits (pleadings in this case); the Declaration of its president, Vasilios Koutsogiannis, with exhibits, Docket No. 5.  It replied with its Reply Memorandum and the Reply Declaration of Koutsogiannis with exhibits, Docket No. 9.

In response, Plaintiff submits its attorney's Declaration with exhibits (pleadings and motions in this case); Declaration of John Bordynuik, Plaintiff's president and chief executive officer with exhibits, and Memorandum of Law, Docket No. 8.

not resolved but Plaintiff filed this action (id. ¶ 20, Ex. C, at 6, ¶ 21).  Defendant questions Plaintiff's good faith in commencing this action, winning the race to the courthouse (id. ¶¶ 22-23).

John Bordynuik of Plaintiff responds that Koutsogiannis and Defendant was doing business in New York (Docket No. 8, Bordynuik Decl. ¶ 9).  Plaintiff claims that Koutsogiannis had other businesses in New York and an apartment in New York City (id. ¶¶ 10, 11).  Plaintiff, however, does not allege the business operations of Defendant (rather than its President) in New York.

In reply, Defendant claims that less than 20% of its business is in New York (Docket No. 9, Koutsogiannis Reply Decl. ¶ 9).

Responses to this Motion was due by June 9, 2021, and reply by June 16, 2021 (Docket No. 7).  The parties made timely responses and replies (Docket Nos. 8, 9) and the Motion was deemed without oral argument.

### III.     Discussion

A.  Applicable Standards—Choice of Law

In diversity cases, federal court applies substantive law of the jurisdiction where the Court sits, here of New York, see Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (including state's choice of law regime); see also Giarcla v. Coca-Cola Co., No. 17CV359, 2021 WL 1110397, at *3-4 (W.D.N.Y. Mar. 23, 2021) (Skretny, J.).  Under New York choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the

jurisdiction involved." <u>Matter of Allstate Ins. Co.</u>, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).

Although Defendant denies personal jurisdiction, it does not argue that Florida (or any other jurisdiction's) law applies. None have suggested that the purchase agreement contained a choice of law provision. Defendant cites New York cases (or federal cases applying New York law) (<u>see generally</u> Docket Nos. 5, Def. Memo.; 9, Def. Reply Memo.). Defendant's Motion turns on jurisdictional and venue questions that are addressed under federal law or, for exercise of personal jurisdiction, under New York law, <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 495 (2d Cir. 2006). Defendant argues that Plaintiff fails to state claims in the First, Third, and Fourth Causes of Action under New York law (or federal courts applying New York law) (Docket No. 5, Def. Memo. at 15-18, 17, citing, <u>e.g.</u>, <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (New York law does not recognize separate causes of action for breach of implied covenant of good faith and breach of contract)); Docket No. 9, Def. Reply Memo. at 7-8 (citing rules under New York law and New York U.C.C.). Thus, New York substantive law applies to Plaintiff's claims.

To determine personal jurisdiction over a nondomiciliary Defendant, the "breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located," <u>Thomas</u>, 470 F.3d at 495; <u>see</u> <u>Chufen Chen v. Dunkin' Brands, Inc.</u>, 954 F.3d 492, 497-98 (2d Cir. 2020) (Docket No. 5, Def. Memo. at 6), New York law applies.

This Court first considers Defendant's Motion to Dismiss for lack of personal jurisdiction, then (if necessary) dismissal for improper venue or for transfer to the

Southern District of Florida.  If these are denied, this Court then will address Defendant's Motion to Dismiss the First, Third, and Fourth Causes of Action.

      B.  Personal Jurisdiction

          1.  Applicable Standards

Defendant seeks dismissal of the action for lack of personal jurisdiction (under Federal Rule of Civil Procedure 12(b)(2)).  Plaintiff bears the burden, by preponderance of the evidence, of demonstrating the existence of personal jurisdiction over Defendant, Penachio v. Benedict, 461 F. App'x 4, 5 (2d Cir. 2012) (summary Order); Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994); Volkswagenwerk Aktiengesellscharft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984) (Plaintiff must demonstrate by the preponderance of the evidence that in personam jurisdiction exists).

This Court may determine a Rule 12(b)(2) motion on pleadings and affidavits alone or allow jurisdictional discovery or conduct an evidentiary hearing, considering factual materials outside of the pleadings to determine the existence of personal jurisdiction, Peerless Ins. Co. v. Broan-Nutone, LLC, No. 19CV1699, 2020 WL 4194457, at *2 & n.2 (W.D.N.Y. July 21, 2020) (Crawford, J.).  Before discovery, "a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction," DiFilippo v. Special Metals Corp., 299 F.R.D. 348, 352 (N.D.N.Y. 2014), that is "where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant" id. (citations omitted).

Federal personal jurisdiction against a non-domiciliary corporation involves a two-part analysis, Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp.2d 458, 465 (S.D.N.Y. 2008).

> "First, the Court must look to the forum state's general jurisdictional or long-arm jurisdictional statute to determine whether in personam jurisdiction exists over the nonresident defendant." Eastman Kodak Co. v. [Kyocera] Corp., No. 10cv6334, Docket No. 48, Order at 4, 2011 U.S. Dist. LEXIS 40486, at *7 (W.D.N.Y. Apr. 13, 2011) (Siragusa, J.).   "Second, if the relevant statute allows the court to exercise jurisdiction, the court must then determine 'whether the exercise of jurisdiction comports with due process,'" id.; Savin v. Ranier, 898 F.2d 304, 306 (2d Cir.1990)."

Sayles v. Pacific Eng'g & Constr., Ltd., No. 08CV676, 2012 WL 895944, at *3 (W.D.N.Y. Mar. 15, 2012) (Scott, Mag. J.); see also Eastman Kodak Co. v. Kyocera Corp., No. 10CV6334, 2011 WL 1432038, at *2-3 (W.D.N.Y. Apr. 13, 2011).

There are two ways that New York exercises personal jurisdiction over a nondomiciliary cited by Plaintiff, general jurisdiction pursuant to CPLR 301 and specific jurisdiction under CPLR 302, Thackurdeen v. Duke Univ., 130 F. Supp.3d 792, 798 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016).

> "The Supreme Court has held that '[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.' Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Wilderness USA, Inc. v. DeAngelo Bros. LLC, 265 F. Supp.3d 301, 305-06 (W.D.N.Y. 2017) (Wolford, J.).  "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."  Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014) (quotation omitted); Wilderness USA, supra, 265 F. Supp.3d at 306.  "Daimler established that,

except in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." Brown [v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016)] (internal quotation marks omitted)," Chufen Chen, supra, 954 F.3d at 498.

New York codified general jurisdiction in CPLR 301, in which "a court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."   The authority under this section to exercise jurisdiction over a foreign corporation is "based solely upon the fact that the defendant is 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction,'" McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981) (citations omitted); Laufer v. Ostrow, 55 N.Y.2d 305, 309-10, 449 N.Y.S.2d 456, 458 (1982).  If a corporation is here "not occasionally or causally, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts," Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915 (1917) (Cardozo, J.).

Specific jurisdiction is enacted under CPLR 302, "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: . . . 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . ," N.Y. CPLR 302(a)(1).

The test for specific jurisdiction is whether Defendant transacts any business in New York and, if so, whether this case arises from these business transactions, Ascento Capital, LLC v. MinervaWorks, LLC, No. 20 Civ. 6195, 2021 WL 2206487, at *4 (S.D.N.Y. June 1, 2021) (Docket No. 8, Pl. Memo. at 6).  For transacting business, there must be

purposeful activities within New York to justify bringing Defendant before New York courts, see id. at *4; SPCA of Upstate N.Y., Inc. v. American Working Collie Ass'n, 18 N.Y.3d 400, 404, 940 N.Y.S.2d 525, 527 (2012).  For a case to arise from Defendant's activities in New York "there must be an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York," Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (quotation omitted).

This Court "must look to the 'totality of the circumstances' to determine whether" a nondomiciliary transacts business in New York and "even a single New York business transaction may be sufficient, provided the cause of action arises 'out of the subject matter of the [transaction],'" Warner Bros. Entert. Inc. v. Ideal World Direct, 516 F. Supp.2d 261, 26 (S.D.N.Y. 2007) (quoting Viacom Int'l, Inc. v. Melvin Simon Prods., 774 F. Supp. 858, 862 (S.D.N.Y. 1991)).  New York courts require a purposeful act in the state related to the transaction giving rise to the complaint, Cooper, Robertson & Partners, LLP v. Vail, 143 F. Supp.2d 367, 372 (S.D.N.Y. 2001); see Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198-99 (1988).

2.  Parties' Contentions on Personal Jurisdiction

Defendant seeks dismissal of this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  First, it denies it was at home in New York for general jurisdiction under CPLR 301 to apply (Docket No. 5, Def. Memo. at 6).  Second, Defendant claims that its December 4th meeting in Niagara Falls with Plaintiff did not satisfy the requirements for specific jurisdiction under CPLR 302 (id. at 7-8).  Defendant concludes that there is no proof that it purposefully availed itself of the privilege of

conducting business in New York (id. at 1).  Nor does the Complaint allege purposeful conduct to project Defendant into this state (id. at 8).

Plaintiff responds that Defendant's president, Koutsogiannis, had contacts with New York (an apartment in New York City and operation of other businesses in New York State) with a shipping address in Ronkonkoma, New York, for this Court to have personal jurisdiction over Defendant (Docket No. 8, Pl. Memo. at 4).  Plaintiff also contends that this Court has specific jurisdiction over Defendant for transacting business in this state (id. at 5-9).

### 3.  Personal Jurisdiction over Defendant

#### a.  General Jurisdiction, CPLR 301

Plaintiff alleges that Defendant is a Florida LLC with its principal place of business there (Docket No. 4, Compl. ¶ 3; see Docket No. 5, Def. Memo. at 6; Docket No. 9, Def. Reply Memo. at 2-3).  But Defendant's only contacts with New York are Koutsogiannis's meeting in Niagara Falls and subsequent correspondence from Florida leading to the sale (Docket No. 4, Compl. ¶¶ 13-14); Defendant's down payment was made from its account in Lockport, New York (Docket No. 8, Bordynuik Decl. ¶ 20); and a demand letter from March 15, 2021, from Defendant's attorneys, who were licensed to practice in New York and not Florida (id. ¶ 26, Ex. C).  These contacts arise from Plaintiff's hemp products order.  Plaintiff does not allege any other Defendant's activities in New York.  Thus, there is no general jurisdiction over Defendant in New York.

In addition, Plaintiff argues personal jurisdiction over Defendant arises from president Koutsogiannis's alleged contacts in New York in addition to the Niagara Falls meeting with Plaintiff (Docket No. 8, Def. Memo. at 2-4; id., Bordynuik Decl. ¶¶ 10-11).

Defendant deems these contacts to be irrelevant and "patently insufficient to establish" jurisdiction (Docket No. 9, Def. Reply Memo. at 3 n.1).   As the late CPLR scholar David Siegel observed, "the question is not whether a corporate officer is in New York but whether the corporation is," David D. Siegel, <u>New York Practice</u> § 82, at 144 (5th ed. 2011).   When a foreign corporation's officer is in New York "on private rather than corporate business when served, jurisdiction of the corporation does not necessarily result," <u>id.</u>   Sandstone Springs here argues Defendant is present in New York from Koutsogiannis's use of an apartment in New York and his other businesses in the state. Plaintiff does not allege the corporate defendant's activities in New York other than this hemp order and the personal activities of Koutsogiannis and his other enterprises.

Plaintiff has not alleged regular and continuous conduct and transaction of business by Defendant (as distinct from its president or his other holdings) in New York. Thus, Plaintiff has not shown general jurisdiction over Defendant in this state.

Therefore, Defendant's Motion to Dismiss (Docket No. 5) under Rule 12(b)(2) for general personal jurisdiction is granted.

### b.  Specific Jurisdiction, CPLR 302

Defendant also rejects assertion of specific jurisdiction over it in New York (Docket No. 5, Def. Memo. at 6-9).   It denies being "at home" in New York or that Plaintiff alleged a nexus between its claims and Defendant's conduct that showed it purposefully availed New York (<u>id.</u> at 8-9).   Plaintiff argues that Defendant transacted business in New York from the Niagara Falls negotiation of the hemp sale and Koutsogiannis's representations during that negotiation (Docket No. 8, Pl. Memo. at 6-7).   The remaining contacts for this sale were by mail and Plaintiff's payment into Defendant's New York bank account (<u>id.</u> at

7).  As a purchase by mail, Defendant is not subject to New York's long-arm jurisdiction as transacting business, <u>Concrete Pipe & Prods. Corp. v. Modern Bldg. Materials</u>, 213 A.D.2d 1023, 1024, 624 N.Y.S.2d 496, 497 (4th Dep't 1995) (Docket No. 5, Def. Memo. at 7).

The only connection for Defendant with New York is the December 2019 Niagara Falls meeting with Plaintiff.   Thus, the issue is whether that meeting establishes Defendant transacted business in New York for specific jurisdiction.  The parties dispute the importance of this meeting and the extent of the negotiation of the eventual sales agreement (<u>compare</u> Docket No. 8, Bordynuik Decl. ¶¶ 13-16 <u>with</u> Docket No. 5, Koutsogiannis Decl. ¶¶ 7-12).  Even accepting Plaintiff's contention that it was a four-hour meeting where the terms were negotiated (Docket No. 8, Bordynuik Decl. ¶ 14), a single meeting negotiating the terms "will rarely provide the basis for jurisdiction pursuant to § 302(a)(1), especially when that meeting does not result in the execution of a contract," <u>Barrett v. Tema Dev. (1988), Inc.</u>, 463 F. Supp.2d 423, 430 (S.D.N.Y. 2006); <u>Cooper, Robertson</u>, <u>supra</u>, 143 F. Supp.2d at 372; <u>cf. McKee Elec. Co. v. Rauland-Borg Corp.</u>, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37 (1967).  The New York Court of Appeals in <u>McKee Electric</u> observed that there is no fixed standard to measure minimal contacts to sustain jurisdiction under CPLR 302(a)(1) and that "[o]therwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of New York courts," <u>McKee Elec.</u>, <u>supra</u>, 20 N.Y.2d at 381-82, 283 N.Y.S.2d at 37.

A single meeting "which is significant to the development of the contractual relationship may support a finding of jurisdiction when in combination with other factors,"

Cooper, Robertson, supra, 143 F. Supp.2d at 372 (citing cases); M. Fabrikant & Sons, Inc. v. Adrianne Kahn, Inc., 144 A.D.2d 264, 265, 533 N.Y.S.2d 866, 867 (1st Dep't 1988) (finding jurisdiction where defendant had a single meeting in New York followed by further business dealings outside the state).

In M. Fabrikant & Sons, personal jurisdiction would not attach merely from a single meeting between a New York jeweler and an Arkansas jewelry retailer but the purpose of the meeting in that case was the development of a marketing strategy for defendant, establishing a purposeful act in New York to form personal jurisdiction, 144 A.D.2d at 265-66, 533 N.Y.S.2d at 868.  There, Adrianne Kahn, the president of defendant visited Plaintiff's New York City offices in September 1984 where Kahn arranged for delivery to defendant of flyers and catalogues to promote a Christmas line of merchandise and placed an order for merchandise to be featured in the flyers and catalogues, id. at 264-65, 533 N.Y.S.2d at 867.  Kahn and plaintiff's representative discussed shipments and reorders but subsequent transactions occurred by mail or telephone, id. at 265, 533 N.Y.S.2d at 867.  Plaintiff then sued to recover the proceeds for subsequently delivered jewelry to Defendant.  The Appellate Division held that this initial meeting could not be ignored and was the start of transactions between the parties that led to specific jurisdiction, id. at 265, 533 N.Y.S.2d at 867.  The Appellate Division concluded that the totality of circumstances there justified finding that defendant's contacts with New York were sufficient to confer jurisdiction, id. at 266, 533 N.Y.S.2d at 867.

In the present case (despite the factual disputes as to its contents and duration), Plaintiff's meeting with Koutsogiannis of Defendant in December 2019, coupled with subsequent email and telephone negotiations in establishing the sales agreement, is

purposeful contact with New York that are sufficient to confer personal jurisdiction over Defendant, see id. at 266, 533 N.Y.S.2d at 867.

Here, Plaintiff alleged both the New York meeting and subsequent negotiations. The parties in Niagara Falls discussed at least the concept of the hemp purchase and they later refined the terms of this sale and consummated it in that subsequent correspondence.   That introductory Niagara Falls meeting was significant to the development of the sales agreement.  Upon the totality of circumstances alleged herein, specific jurisdiction in New York upon Defendant exists.

Thus, Defendant's Motion to Dismiss for lack of personal jurisdiction (Docket No. 5) is denied on specific jurisdiction grounds.  Next, this Court considers whether venue in this district is appropriate.

### C.  Venue, Rule 12(b)(3) and 28 U.S.C. § 1406

#### 1.  Applicable Standards

Defendant next moves for dismissal for improper venue (under Rule 12(b)(3) or 28 U.S.C. § 1406(a)).  Proper venue under 28 U.S.C. § 1391(b) is when an action brought in the judicial district where a defendant resides, the district where "substantial part of the events or omissions giving rise to the claim occurred, or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction," 28 U.S.C. § 1391(b)(1)-(3). A corporate defendant is deemed to reside in the district in which the defendant is subject to personal jurisdiction, id. § 1391(c)(2).

On a Rule 12(b)(3) motion, facts must be shown that will defeat the plaintiff's assertion of venue, 5B Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure § 1352, at 320 (Civil 3d 2004). All well-pleaded allegations of venue are taken as true unless contradicted by Defendant's affidavit, id. at 324. As with Rule 12(b)(2) motion, this Court may examine facts outside of the pleadings, and draw all reasonable inferences and resolves factual conflicts for Plaintiff, id.

Under § 1406(a), this Court can either dismiss an action improperly venued or transfer the case in the interest of justice to the district where it could have been brought, 28 U.S.C. § 1406(a).

2. Parties' Contentions on Venue

Defendant alternative argues for dismissal for improper venue under Federal Rule 12(b)(3), denying that it had any contacts with New York. It argues that none of the events in this case occurred in New York. Given its contention that there was no personal jurisdiction over it, Defendant concludes that venue is not appropriate in this district. (Docket No. 5, Def. Memo. at 9-10.)

Plaintiff differs, arguing that the substantial events occurred in New York, such as Defendant's visit in Niagara Falls, preparation of product, receipt of payment, and storage of product in New York (Docket No. 8, Pl. Memo. at 10-11). Plaintiff responds that venue in this district is proper, resting upon Koutsogiannis's Niagara Falls meeting in December 2019, touring Plaintiff's facility, testing products, making representations, as well as negotiating the terms of the agreement, as a basis for venue (id. at 9-11). Plaintiff believes venue is proper because New York has personal jurisdiction over Defendant (id. at 11).

17

### 3.  Analysis

As held above that New York has specific jurisdiction over Defendant, for venue purposes Defendant also resides in New York, hence venue of this action is this district is appropriate under § 1391(b), (c)(2).  Plaintiff adequately alleged proper venue here. The introduction of the parties in Niagara Falls leading to the sales agreement forms a basis for venue in this district.  Therefore, Defendant's Motion to Dismiss for improper venue (Docket No. 5) is denied.

Next, this Court considers the transfer of venue.

### D.  Transfer to the Southern District of Florida

#### 1.  Applicable Standards, 28 U.S.C. § 1404

Alternatively, Defendant moves to transfer this case to the United States District Court for the Southern District of Florida (its home district), pursuant to 28 U.S.C. § 1404.

This section provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented," 28 U.S.C. § 1404(a); see 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 326 (Civil 3d 2004) (this Court may transfer an action to another district in the interest of justice).

Defendant bears "the burden of establishing the propriety of transfer by clear and convincing showing, Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950)," Breeden v. Tricom Business Sys., Inc., 244 F. Supp.2d 5, 8 (N.D.N.Y. 2003) (see Docket No. 8, Pl. Memo. at 13); see also D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006) (defendant has the burden of

establishing the convenience of parties and witnesses for determining venue).  The court in <u>Breeden</u> terms this burden to be a heavy one, <u>Breeden</u>, <u>supra</u>, 244 F. Supp.2d at 11.

The Second Circuit lists several factors to consider when transferring the action, (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents; (4) convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel attendance of witnesses; and (7) the relative means of the parties, <u>Employers Ins. of Wausau v. Fox Entm't Group, Inc.</u>, 522 F.3d 271, 274-75 (2d Cir. 2008) (Docket No. 5, Def. Memo. at 11), <u>quoting</u> <u>D.H. Blair</u>, <u>supra</u>, 462 F.3d at 106-07.  Other factors include (8) this Court's familiarity with governing law and (9) trial efficiency and the interest of justice, <u>Distefano v. Carozzi N. Am., Inc.</u>, No. 98 CV 7137, 2002 WL 31640476, at *1 (E.D.N.Y. Nov. 16, 2002) (Docket No. 8, Pl. Memo. at 12-13). These factors need not be accorded equal weight and this Court has broad discretion in determining venue and transfer upon "notions of convenience and fairness on a case-by-case basis," <u>Breeden</u>, <u>supra</u>, 244 F. Supp.2d at 9; <u>In re Cuyahoga Equip. Corp.</u>, 980 F.2d 110 117 (2d Cir. 1992).  Furthermore, Plaintiff's choice of forum is given great weight, <u>see</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and the convenience of witnesses has been found to be the "most important factor in the transfer analysis," <u>Breeden</u>, <u>supra</u>, 244 F. Supp.2d at 10; <u>Coker v. Bank of Am.</u>, 984 F. Supp. 757, 765 (S.D.N.Y. 1997).

Unlike a transfer for improper venue under 28 U.S.C. § 1406(a), a court under § 1404 need not have personal jurisdiction over the defendant to transfer the action to another district, <u>Fresca v. Arnold</u>, 595 F. Supp. 1104, 1105 (E.D.N.Y. 1984) (Docket No. 5, Def. Memo. at 13-14); <u>Volk Corp. v. Art-Pak Clip Art Serv.</u>, 432 F. Supp. 1179,

1181 & n.4 (S.D.N.Y. 1977) (footnotes citing cases).  Section 1406(a) requires either dismissal or transfer to another district in the interest of justice, 28 U.S.C. § 1406(a).  This Court also need not choose between § 1404 and § 1406 to justify transfer, <u>Fresca</u>, <u>supra</u>, 595 F. Supp. at 1105.

### 2.  Parties' Contentions on Venue

If not dismissed either on jurisdictional or venue grounds, Defendant alternatively moves to transfer the case to the Southern District of Florida (Docket No. 5, Def. Memo. at 11-15).  It argues that transfer factors acknowledged in this Circuit under § 1404(a) favor transfer to Florida (<u>id.</u> at 11-13) or under § 1406(a) (<u>id.</u> at 14-15).

Weighing the transfer factors, Plaintiff focuses on its president as a witness and source of documents to justify retaining venue in this district (Docket No. 8, Pl. Memo. at 12-14).

### 3.  Analysis

Since personal jurisdiction over Defendant in this Court has been established, there is no need to consider transfer under 28 U.S.C. § 1406(a) in the interest of justice.

Under § 1404(a), a properly venued action nevertheless may be transferred to another district in the interest of justice if factors support such a transfer.  The parties here raise contrary conclusory arguments regarding transfer.  Neither side has shown a hardship or that witnesses reside or documents are located outside of this district and that the parties would have difficulty obtaining them here.  It is presumed (but not expressly argued, <u>cf.</u> Docket No. 5, Def. Memo. at 14-15) that Defendant's witnesses and documents are in Florida, with those witnesses beyond the scope of process from this Court.  But, as noted by Plaintiff (<u>see</u> Docket No. 8, Pl. Memo. at 13), Defendant has not

identified any witnesses that would incur hardship with a trial in this district. Plaintiff, on the other hand, points out that its president and its documents are in this district (id. at 12).

The first factor, Plaintiff's choice of forum, does not favor transfer. This factor is given great weight. Plaintiff's choice of its home state as the forum is entitled to deference, cf. Children's Network, LLC v. PixFusion LLC, 722 F. Supp.2d 404, 411 (S.D.N.Y. 2010).

Defendant's president Koutsogiannis argues that there was a race to the courthouse resulting in this case being filed in this district due to Plaintiff's purported bad faith in filing first (Docket No. 5, Koutsogiannis Decl. ¶¶ 19-22). Defendant's demand letter for return of its down payment was dated March 15, 2021 (Docket No. 5, Koutsogiannis Decl. Ex. C). That letter gave Plaintiff until March 22, 2021, to refund or Defendant would take legal action against Plaintiff, its related companies, and Bordynuik (id.). There was no refund and Plaintiff filed this suit in state court on March 19, 2021. Defendant has not filed its own action (or disclosed any suit against Plaintiff to this Court). The "first-to-file rule" is not applicable because there are not competing cases to decide which case should proceed, cf. First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989). Instead of commencing a parallel action, Defendant moved to dismiss this case or to change its venue. This allegation of racing to the courthouse is not sufficient to overcome the weight given to a litigant's choice of forum.

The remaining factors are neutral to transfer. As for the second (the convenience of witnesses), third (the location of relevant documents), and fifth (the locus of operative facts) factors, these are neutral for a transfer, see Breeden, supra, 244 F. Supp.2d at 9,

10.   Witnesses and documents are presumably in both New York and Florida.   To convince this Court to transfer to the Southern District of Florida, Defendant needed to provide a list of those witnesses inconvenienced if this case remains here.   Defendant has not done so.   Plaintiff generally argues that its documents and its apparent prime witness, Bordynuik, is in New York (see Docket No. 8, Pl. Memo. at 13).

Similarly, the sixth factor, availability of process, does not resolve the matter because each party is disadvantaged whether the case is tried here or in the Southern District of Florida in obtaining process to compel witnesses from Florida or New York, respectively, see Breeden, supra, 244 F. Supp.2d at 10.

The convenience to the parties (the fourth factor) and the relative means of the parties (the seventh factor) are neutral regarding transfer.   Neither side express any financial or other inconveniences for these corporation to pursue this action here or in Florida.   There is no evidence of the relative wealth or resources of the parties, so this Court cannot test whether proceedings here or in Florida would be burdensome on one party or the other.   Unlike individual litigants, great weight is not given to the relative means where both parties are corporations, Boehner v. Heise, 410 F. Supp.2d 228, 242 (S.D.N.Y. 2006) (see Docket No. 5, Def. Memo. at 13; Docket No. 9, Def. Reply Memo. at 7).

Although Plaintiff cites the factor of familiarity with relevant law, neither side discusses this.   As noted above, New York substantive law applies to this contract dispute.   Defendant has not argued that Florida law applies.   Thus, there is nothing favoring transferring the case to Florida for application of Florida law.   Plaintiff also notes

the last factor of trial efficiency and the interest of justice but again neither side addresses either item supports proceedings in this district or the Southern District of Florida.

This case is a contract dispute between a New York corporation and a Florida corporation.   As implicit in the Declaration of Defendant's president (Docket No. 5, Koutsogiannis Decl. ¶¶ 18-23), the parties' disputes under the hemp sales contract could have been commenced in either state, but Plaintiff filed here first.   Defendant, in attempting to overturn Plaintiff's choice of forum, has not shown sufficient burden or inconvenience to justify transfer to Florida.  All factors (save Plaintiff's choice of forum) are neutral to transfer and none call for transferring this action to the Southern District of Florida.  Defendant has not established the Interest of justice to transfer this case.

Therefore, Defendant fails to meet its burden to justify transferring this action to Florida; its alternative Motion (Docket No. 5) for that relief is denied.  Finally, this Court considers Defendant's Motion (id.) to Dismiss certain causes of action it deems redundant to Plaintiff's breach of contract claim.

### E.  Motion to Dismiss, Rule 12(b)(6)

#### 1.  Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible

on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.  Applicable Standards for Plaintiff's Causes of Action

The First Cause of Action alleges failure to pay for goods (Docket No. 4, Compl. ¶¶ 31-37).  Plaintiff now argues that this claim arises under the Uniform Commercial Code (Docket No. 8, Pl. Memo. at 15).  Under provisions of the U.C.C., "to recover on a claim for goods sold and delivered, a plaintiff must show that:  (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods," <u>Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.</u>, 952 F. Supp.2d 542, 571 (S.D.N.Y. 2013) (citing N.Y. U.C.C. § 2-607(1)) (<u>id.</u>).

The Third Cause of Action seeks specific performance of the original hemp sales agreement as modified by the two change orders (Docket No. 4, Compl. ¶¶ 47-52). Specific performance is a form of relief for breach of contract, <u>see, e.g.</u> <u>Cacchillo v. Insmed Inc.</u>, 833 F. Supp.2d 218, 236 (N.D.N.Y. 2011).  To obtain specific performance, Plaintiff must establish its willingness and ability to perform its remaining obligations, that Defendant was able to perform its obligations, and that there is no adequate remedy at law to address Defendant's nonperformance, <u>see id.</u> (citing New York cases) (Docket No. 8, Pl. Memo. at 16).

The Fourth Cause of Action alleges breach of the implied duty or covenant of good faith and fair dealing (Docket No. 4, Compl. ¶¶ 54-59).  "The covenant of good faith and fair dealing is not distinct from the underlying contract, and therefore, as a general rule, the cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract," <u>Alter v. Bogoricin</u>, No. 97 Civ. 0662(MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov.6, 2007) (citations and internal quotation marks omitted); <u>JP Morgan</u>

Chase Bank, N.A. v. IDW Group, LLC, No. 08 Civ. 9116(PGG), 2009 WL 321222, at *5

(S.D.N.Y. Feb. 9, 2009).  Further,

> "Typically, 'raising both claims in a single complaint is redundant, and courts
> confronted with such complaints under New York law regularly dismiss any
> freestanding claim for breach of the covenant of fair dealing.'  Jordan v.
> Verizon Corp., No. 08 Civ. 6414(GEL), 2008 WL 5209989, at *7 (S.D.N.Y.
> Dec.10, 2008) (collecting cases and dismissing claim for breach of implied
> covenant of good faith and fair dealing without leave to replead)."
>
> . . .
>
> "'Consequently, a claim for breach of the implied covenant of good faith can
> survive a motion to dismiss "only if it is based on allegations different from
> those underlying the accompanying breach of contract claim."'  Grand
> Heritage Mgmt., LLC v. Murphy, No. 06 Civ. 5977(NRB), 2007 WL 3355380,
> at *6 (S.D.N.Y. Nov.5, 2007) (quoting Siradas v. Chase Lincoln First Bank,
> N.A., No. 98 Civ. 4028(RCC), 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30,
> 1999))."

Id. at *5.

The court in JP Morgan Chase Bank concluded that to

> "simultaneously plead breach of contract and implied covenant claims
> under New York law, a plaintiff must allege an implied duty that is consistent
> with the express contractual terms, but base its implied covenant theory on
> allegations that are distinct from the factual predicate for its contract claims.
> While independent obligations beyond those stated in the contract will not
> be inferred, a plaintiff adequately states an implied covenant claim by
> alleging conduct that subverts the contract's purpose without violating its
> express terms."

Id.

Meanwhile, the Second Cause of Action alleges breach of the sales contract (as

modified by the change orders) (Docket No. 4, Compl. ¶¶ 39-45).  To allege a breach of

contract under New York common law, e.g., Wile v. James R. Ins. Co., No. 17CV1275,

2022 WL 309953, at *7 (W.D.N.Y. Feb. 2, 2022) (Skretny, J.), Plaintiff must prove the

existence of a contract with Defendant, performance of Plaintiff's obligations under the

contract, breach of the contract by Defendant, and damages to Plaintiff caused by that

breach, e.g., Diesel Props S.r.l. v. Greystone Business Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citing cases).

### 3.  Parties' Contentions

Defendant argues that, if the case is not otherwise dismissed on jurisdictional or venue grounds (and thus remains in this District), the First, Third, and Fourth Causes of Action are duplicative of the breach of contract alleged in the Second Cause of Action and should be dismissed (Docket No. 5, Def. Memo. at 15-18; Docket No. 9, Def. Reply Memo. at 2, 7-9).  Defendant has not moved to dismiss this Second Cause of Action.

Defendant also asserts that Plaintiff initially did not articulate a claim in the First Cause of Action for failure to pay for goods (Docket No. 5, Def. Memo. at 15-16) but Plaintiff now argues that it alleged violation of the U.C.C. in that Cause of Action (Docket No. 8, Pl. Memo. at 15; but cf. Docket No. 9, Def. Reply Memo. at 8).

As for the Third Cause of Action, Defendant contends that it is also duplicative of the Second Cause of Action (Docket No. 5, Def. Memo. at 16).  Like the First Cause of Action, Plaintiff has not alleged distinct facts or sought relief different in the Third Cause of Action from the Second Cause of Action (id. at 17).  Defendant also argues that specific performance should be denied in New York law where money damages are an adequate remedy, Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics, Inc., 819 F. Supp.2d 230, 240-41 (S.D.N.Y. 2011) (Docket No. 9, Def. Reply Memo. at 7).  Plaintiff argues that there is no inconsistency between a breach of contract claim and specific performance of a contract (Docket No. 8, Pl. Memo. at 16).  Defendant replies that Plaintiff concedes that Plaintiff's Third and Second Causes of Action seek identical relief, and that

<u>Versatile Housewares</u>, cited by Plaintiff (<u>id.</u>) rejects its contention (Docket No. 9, Def. Reply Memo. at 7).

Similarly, Defendant argues that Plaintiff's cited authority supporting its Fourth Cause of Action holds the opposite conclusion; <u>JP Morgan Chase Bank</u>, <u>supra</u>, 2009 WL 321222, at *4, provided the implied duty of good faith and fair dealing as an alternative when there was no alleged breach of contract (Docket No. 9, Def. Reply Memo. at 7-8; <u>but cf.</u> Docket No. 8, Pl. Memo. at 18).

Defendant contends that the Fourth Cause of Action also is duplicative of the breach of contract claim alleged in the Second Cause of Action (Docket No. 5, Def. Memo. at 17-18).

Plaintiff responds that, under the liberal pleading standards of the Federal Rules of Civil Procedure, it has alleged plausible claims in the First, Third, and Fourth Causes of Action (Docket No. 8, Pl. Memo. at 14-15, 18-19).  It claims it stated a U.C.C. violation in the First Cause of Action claiming generally that it alleges different elements than its breach of contract claim (<u>id.</u> at 15-16).  Plaintiff next argues there is no inconsistency in New York law alleging both specific performance and breach of contract, to uphold its Third Cause of Action (<u>id.</u> at 16-17).

4.   Analysis

a.   First Cause of Action, Failure to Pay for Goods

The First Cause of Action alleges that the parties entered into a sales agreement but Defendant fails to pay the balance for the hemp products ordered (Docket No. 4, Compl. ¶¶ 30-37).  Compared with the Second Cause of Action for breach of that contract, the allegations are the same, that the parties entered a contract to purchase goods and

Defendant failed to pay the balance for invoiced goods ordered under that contract (id. ¶¶ 38-45). Although Plaintiff now argues that the First Cause of Action is a U.C.C. claim (despite not expressly alleging it), the relief sought is the same as in the Second Cause of Action, payment of the remaining balance (compare id. ¶¶ 36-37 with id. ¶¶ 44-45), see Copperwood Capital LLC v. JAG Staffing and Consulting Servs., Inc., No. 20-CV-1406 (EK)(RER), 2021 WL 919871, at *3 (E.D.N.Y. Feb. 10, 2021) (plaintiff seeks remedies under U.C.C. claims are not different from breach of contract claim).

Therefore, Defendant's Motion to Dismiss the First Cause of Action (Docket No. 5) as redundant to the Second Cause of Action is granted.

### b. Third Cause of Action, Specific Performance

The Third Cause of Action alleges specific performance of the sales agreement, that is payment of the balance due (Docket No. 4, Compl. ¶¶ 46-52). This is identical to the relief for the breach of contract claim. While this cause of action seeks to compel the act of payment, paying money is a legal remedy. Specific performance "usually is limited to contracts for whose breach the traditional remedy of damages is inappropriate because the unusual goods or services involved are difficult to value," La Mirada Products Co. v. Wassall PLC, 823 F. Supp. 138, 141 (S.D.N.Y. 1993); Litho Prestige, Div. of Unimedia Group, Inc. v. News America Pub., Inc., 652 F. Supp. 804, 809 (S.D.N.Y. 1986) (specific performance is limited where contract damages is inappropriate because unusual goods are involved that are difficult to value). Plaintiff here has not alleged that the hemp products are unusual or difficult to value to state relief of specific performance; the parties valued the hemp products in the initial sales agreement and adjusted the value with the change orders. Damages (as alleged in the Second Cause of Action for breach of

contract) provide an adequate relief here.  The Third Cause of Action is duplicative of the Second Cause of Action, but ineffectively cast as claim for equitable relief.

Defendant's Motion to Dismiss the Third Cause of Action (Docket No. 5) is granted.

### c.  Fourth Cause of Action, Duty of Good Faith and Fair Dealing

Plaintiff here alleges that Defendant violated the duty by not paying for products ordered in the sales agreement and its change orders (Docket No. 4, Compl. ¶¶ 53-59). These allegations repeat the facts alleged elsewhere in the Complaint (id. ¶ 53) and not facts distinct from the breach of contract claim (see id. ¶¶ 38-45).  Plaintiff has not alleged an independent obligation to not breach the duty of good faith and its Fourth Cause of Action duplicates the breach of contract claim in the Second Cause of Action, e.g., JP Morgan Chase Bank, supra, 2009 WL 321222, at *5.

Plaintiff has restated its breach of contract as a violation of the U.C.C. and deprivation of specific performance as well as breach of the duty of good faith and fair dealing.  While these causes of action have different elements, the facts alleged and the relief sought overlap with the breach of contract.

Defendant's Motion to Dismiss (Docket No. 5) the Fourth Cause of Action is granted.

## IV.  Conclusion

Plaintiff fails to allege general personal jurisdiction in New York over Defendant, a Florida LLC.  Plaintiff, however, alleges specific personal jurisdiction in New York from the December 4, 2017, Niagara Falls meeting between the parties that led to the contract to sell hemp products at issue here.  Therefore, Plaintiff established personal jurisdiction

over Defendant.  Defendant's Motion to Dismiss (Docket No. 5) is denied in part (on specific jurisdiction grounds) while granted in part (on allegations of general jurisdiction).

As a result of specific personal jurisdiction over Defendant, venue is this district is proper; Defendant's Motion to Dismiss for improper venue (id.) is denied.  Defendant's alternative Motion to transfer this case to the Southern District of Florida (id.) also is denied.  Defendant has not established that transfer to the Southern District of Florida was in the interest of justice.

Defendant's Motion to Dismiss (id.) the First Cause of Action for failure to pay for goods is granted.  Its Motion (id.) to Dismiss the Third Cause of Action for specific performance is granted.  Finally, Defendant's Motion (id.) to Dismiss the Fourth Cause of Action for breach of the implied duty of good faith also is granted.  These three causes of action are duplicative of the Second Cause of Action for breach of contract.

Thus, Plaintiff alleges a breach of contract against Defendant, this Court has personal jurisdiction over Defendant, and this case is properly venued in this district.  Defendant shall answer the remaining claim for breach of contract in this action within fourteen (14) days of entry of this Decision and Order.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 5) for lack of personal jurisdiction is GRANTED IN PART (dismissing general personal jurisdiction allegations), DENIED IN PART (upholding specific personal jurisdiction allegations).

FURTHER, that Defendant's Motion (id.) to dismiss for improper venue is DENIED.

FURTHER, that Defendant's alternative Motion (id.) to transfer this action to the United States District Court for the Southern District of Florida is DENIED.

FURTHER, that Defendant's Motion (id.) to Dismiss the First, Third, and Fourth Causes of Action is GRANTED.

FURTHER, that Defendant shall answer the remaining claim for breach of contract alleged in the Second Cause of Action within fourteen (14) days of entry of this Decision and Order.

SO ORDERED.


Dated:      July 29, 2022
            Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge